NEW YORK COUNTY—HON. CHARLES McVEAN, SURROGATE—1847.

## *In re* SCOTT.*

### *In the Matter of the final settlement of the accounts of* JOEL S. OATMAN, *executor of* JAMES SCOTT, *deceased.*

An executor has the authority, as the successor and legal representative, to sell a debt of the testator ; and such sale having been made in good faith, prudently and discreetly,—*Held*, that he should not, in equity, be held liable for more than he received.

Medical attendance upon the deceased being valuable, the law presumes a promise to pay, and in order to defeat the claim, affirmative evidence that such service was gratuitously rendered must be produced.

P. REYNOLDS, *for the executor.*

H. M. WESTERN, *for legatees.*

THE SURROGATE.—The executor submitted his final account of proceedings, including also a personal claim against the

* Reported in 5 *N. Y. Leg. Obs.*, 378.

estate of the testator, for allowance and settlement. The residuary legatee—the widow being now deceased—contested both the account and the claim; and the proofs having been taken before me, I am now called upon to decide the matter in controversy.

The testator by his will gave the use and interest of all his property to his wife during her lifetime, and so much of the principal as might be necessary for her support. The property which the testator left was a judgment for $985.36 against Jane Hays, recovered a few days previous to his death. A few days after his death, a bill in chancery was filed in the name of the executor, in aid of the recovery of that judgment, by the attorneys of the testator, in which bill several other creditors of Jane Hays were parties, and which was filed without consultation with the executor. All the creditors afterwards settled the suit, some receiving more in proportion than the others, each having made a separate settlement. The amount recovered by the executor was $600 and the costs, and the judgment was assigned to a friend.

The propriety of this settlement has been questioned, and the evidence of the counsel of the parties in that controversy, and of others, has been taken on this hearing. As a matter of fact, I am satisfied, considering the litigation that would ensue the prosecution of that bill before the debt could probably be recovered, and the poverty of the estate of the testator otherwise, that the settlement was made prudently, in good faith, and that the best interests of the estate were thereby promoted.

The question has been raised whether an executor has the authority to release a debt due the estate or to sell it, and if he has so released or sold the same, whether he be not liable for the whole sum of the debt in his account. The counsel for the executor has referred to the 25th section of the statute (2 *Rev. Stat.*, 87), as affording the authority of the executor to sell in this instance.

The provision is as follows: " If any executor, &c., shall discover that the debts against any deceased person and the

legacies bequeathed by him cannot be paid and satisfied without a sale of the personal property of the deceased, the same, so far as may be necessary for the payment of such debts and legacies, shall be sold." This provision confers no authority upon the executor to sell, neither does it restrain him in the general right to sell any portion of the personal property. The authority of the executor to sell is now as full and perfect as it was before that statute was passed. It is his duty to sell in the cases mentioned in the statute; but it was not designed to restrain him in his right or power to sell in any case. Neither can that section be construed as recognizing the right to sell the debt due to the testator as "personal property" required to pay his debts. Although "personal property," as used in another chapter of the Revised Statutes, would include choses in action; as used in this section and chapter, "personal property" means personal property at common law.

The authority of an executor to compound and release a debt has never been questioned. It has been contended, however, that on a trial at law on a *devastavit*, he would be held accountable in all cases for the amount of the debt released, regardless of the amount received. The rule was always otherwise in equity. It is useless to inquire whether the rule at law, as contended for, ever existed, as this court in this matter proceeds on the principles of equity, which are the principles of the law itself, as now modified by the Revised Statutes. Even if the rule existed now at law, it is a mere relic; for a court of law can in no case issue an execution except on an order of the Surrogate's Court on an adjustment of accounts in the latter court.

An executor is not only bound to compound and release a debt, when the interests of the estate require it, but he would be guilty of culpable neglect if he should fail to do so and lose the debt. He is bound to act in such case as a discreet and prudent man would act, were the debt his own. (*Murray* v. *Blatchford,* 1 *Wend.,* 583; 3 *P. Wms.,* 381.)

The mode in which the composition was effected cannot

change the result. The assignment of the debt to a friend of the debtor was preferred to a release of it, and the estate lost nothing by the assignment, more than it would have done by the release. I do not mean to intimate an opinion that an executor who assigns a chose in action belonging to his estate for a sum less than is due from the debtor, is held to account for a sum greater than he received. If the estate lost nothing by the transaction, it is inequitable that he should account for more than he has received. The legal right and authority of the executor, as the successor and personal representative of the deceased, to sell, is unquestionable, to the extent that the law would allow the testator to sell; and such sale having been made in good faith, prudently and discreetly, with reference to the condition and interests of the estate, I see no reason why he should in equity be held liable for more than he has received, in thus doing an act tending to promote the best interests of the estate intrusted to his care and management.

As regards the debt of the executor against the estate, which is for medical service and attendance, it is satisfactorily proved that he was the family physician of the testator; that he, as such, attended him for several years, for which he had not received any pay. These services being valuable, the law presumes a promise to pay. It is competent, however, for the opposing party to show that the services were rendered gratuitously. Some expressions of the executor of an equivocal character have been testified to, showing that he did not intend or did not expect to receive payment for his professional services. These expressions are met with the proof of the declaration of the testator, regretting his inability to pay. It is manifestly just that the executor should have compensation for his services as a physician. There is some uncertainty as to the amount, but all the circumstances of the case authorize me to subtract something from the account thus rendered by him. I do therefore award him $150. Costs not to be awarded to either party.