JOSEPH C. OSBORNE AND WIFE, *vs.* THADDEUS D. VANHORN, ET AL.

It may be regarded, as established by the English and American decisions, that a mother is entitled to an allowance for the maintenance of her children out of their fortunes, especially where her own fortune is inadequate.

In general this allowance is to be confined to the annual income, and should not extend beyond it; but where the property is small and more than the annual income is necessary for the maintenance of the infants, the Court will sometimes allow the capital to be broken in upon.

If there is a necessity for breaking in upon the capital of an infant for his maintenance, the proper course is *first* to apply to the Courts for its sanction. If, however, this course is not adopted, disbursements beyond the income are at the peril of the guardian, and he is bound, before he obtains an allowance for such disbursements, to show a state of facts demanding and justifying them, and should produce the vouchers, &c., of his expenditures.

The statute of limitations is no bar to items of such expenditure, disbursed more than five years anterior to the filing of a bill by the distributees for an account and distribution.

Where real estate is, by order of the County Court, converted into money, the heirs and distributees cannot claim that the one-third belonging to the widow of intestate for her natural life, be paid over to a master, to be by him laid out at interest. Her life interest in money in her hands is not subject to be disturbed, except on a shewing of fear of loss or making away with it, and even then she should have the privilege of giving security for it.

Joseph C. Osborne and wife, *vs.* Thadeus D. VanHorn, et al.

Appeal from a decree in Chancery rendered in Leon Circuit Court, DOUGLAS, Chief Justice, presiding.

Thadeus D. VanHorn, in right of his wife, Mary Ann, daughter of Daniel Faust, deceased, with others, also children of said Daniel, filed their bill in Chancery against Mary Ann Osborne, (formerly Mary Ann Faust, widow of said Daniel,) administratrix of Daniel Faust, and Joseph C. Osborne her present husband, for an account of the administration, and distribution of the surplus. The defendants answered and submitted their accounts, and claimed an allowance for many items of expenditure for the children of Daniel Faust, disbursed since his death. The defendants also claimed the use, during the life of Mrs. Osborne, of one-third of certain moneys, realized by a sale of real estate of the intestate made by order of Leon County Court. It was referred to a master to make and state an account of the administration, and of the surplus for distribution. The report of the master allowed the administratix the disbursements for the maintenance of the children of Daniel Faust, and the use for life of one-third of the moneys realized from the sale of real estate. The allowance for maintenance of the children was not confined to the annual income of the children. Exceptions were filed to the master's report, and are considered in the opinion of the Court delivered by Justice Baltzell, to which reference is made for the further material facts in this case.

In the Court below a decree was rendered in favor of complainants directing the widow's third of the money arising from the sale of the real estate to be preserved in the hands of the master to be laid out at interest for her benefit during her life, and excluding all disbursements by the administratrix for the maintenance of her children (heirs of Daniel Faust) made more than five years previous to the filing of the bill.

From this decree the defendants (appellants in this Court) appealed, and the complainants took a cross appeal.

This cause was argued by,

*Mr. Archer* for Appellants, and

*Mr. Gwynn* and *Messrs. Long & Walker* for Appellees.

BALTZELL, J., delivered the opinion of the Court:

This suit is instituted by the Complainants to recover from the

46

administratrix of Daniel Faust, dec., the distributive share due to them as heirs of the decedent. The accounts of the administratrix were referred to a master, the exceptions to whose report constitute the ground of appeal to this Court. The mother, now Mrs. Osborne, was administratrix, and complainants object to allowing her " any sum whatever for board and clothing her own children ; this they say was her duty by law and nature." And, secondly, admitting the claim, she was entitled to use no more in their support than the annual interest or profits of their estates. By the Common law it was the duty of parents to support their minor children. 1 Bl. Com., 446.

It has been, and continues to be, an established rule in equity to allow maintenance where the parents are not of ability. Harley *vs.* Bannister, 4 Mod., 275. " It is not necessary that the father should be absolutely insolvent, but that he should not be in sufficient circumstances to maintain his child suitably to his reputation." Buckworth *vs.* Buckworth, 1 Cox, 80. " So in previous cases it was held that a parent must maintain his child unless totally incapable, or by having a numerous family of children, he borders on necessity." 1 Mad. Chy., 344.

Where the circumstances of the father are sufficient for the maintenance of the infant, the court will compel him to do it, and refuse an allowance. 1 Atk., 514. 6 Vesey, 349.

A mother seems to occupy a position somewhat different from the father. Thus Lord Hardwick, in                    said, " As to compelling the mother to maintain her daughter out of her own estate, it will be going too far." 2 Atk., 446.

Lord Eldon has repeatedly declared, " A master cannot do a wiser thing for the benefit of a family than to make a liberal allowance out of the children's fortune for their maintenance and education to a mother who is inadequately provided for." Note to 1 Brown Ch. R., 164. Bradshaw *vs.* Bradshaw, 1 Jac. Pr. 647.

The maintenance will be allowed when the father is not of ability although the mother has a separate estate. 1 Cox, 275.

A mother married to a second husband is not obliged to maintain the children by the first, but shall have an allowance from the interest of their fortunes. 1 Brown, Ch. R., 268.

The English authorities are to the effect stated. Let us see how far the American Courts agree. In Hoffman's Master in Chancery we find " it is the course of the English Courts to appropriate a cer-

tain sum out of the fortune of the infant for his support, and to direct a reference to fix the amount. This is not usual here; the disbursements are judged on the settlement of the guardian's account. The English course is in some respects preferable, least troublesome to the guardian, and least expensive—as the guardian would be allowed the whole sum fixed for his maintenance without proving his disbursements. But it has this disadvantage, that the guardian having a fixed sum, may be tempted to profit by it by diminishing the proper allowance to the infant. 2 Atk., 618. Hoffman's M. C., 135.

The case of Susannah Bostwick, decided by Chancellor Kent was that of a mother of six children having a share of her husband's estate amounting to $3,682.99, a legacy of $250, 1-5 of a house and lot in New York subject to life estate of her mother, 56 years of age. The Chancellor directed an enquiry as to what yearly sum would be a proper allowance for the mother and children, and to examine and report on the justness and truth of the charges for past maintenance. In the case of Hayward vs. Hayward's executor, the Court of Chancery of S. Carolina say, " The children are entitled to a considerable estate, and she has not more than a competent provision for herself. It is reasonable, therefore, that she should be relieved from the burthen of maintaining and educating them. The allowances ought to be liberal but not beneficial. The mother ought to be indemnified for all expenses on account of her children, but not for her care and attention." In this case the sum of $2000 annually was allowed for the maintenance and education of her daughter, and the maintenance of her sons. 4 Dess., 445. It may then be regarded as established both by the English and American decisions, that a mother is entitled to an allowance for maintenance out of the property of her children, especially in cases where her own provision is inadequate.

The second exception is, that this allowance is to be confined to the annual income, and should not extend beyond it.

This is no doubt the general rule, the exception is where the property is small, and more means are necessary for the due maintenance of the infant. In this event the Court will sometimes allow the capital to be broken in upon. 2 Story's Eq., 584.

This rule is founded in prudence and a just regard to the rights of infants, to prevent extravagance and incautious action on the part of guardians. The rule, however, is not inflexible. In the case of

Bostwick above referred to, the subject of breaking in upon the capital of the infant, and of allowance out of the infant's estate for past maintenance were both considered, and the Chancellor says of the former: "We must impair the principal sum or give no relief.— The capital is small when divided among the six children, and we may well adopt the remarks of Lord Keeper North in Barlow *vs.* Grant, "that it was fit and reasonable that part of the principal of a child's legacy of £100 should be allowed for his education.— The money laid out in the child's education was most advantageous and beneficial for the infant, and therefore he should make no scruple of breaking into the principal where so small a sum was devised that the interest thereof would not suffice to give the legatee a competent maintenance and education. But in the case of a legacy of £1000 or the like, it might be reasonable to restrain the maintenance to the interest of the money.

The petitioner also asks for reimbursement for the past maintenance of her children, or for the discharge of debts which she has of, necessity incurred for that purpose. Such an allowance is also within the rules and practice of the Court. Lord Thurlow held that no such allowance could be made; but afterwards 6 Vesey, 454, Lord Eldon approved of this old practice by Lord Rosslyn, and allowed a father to be reimbursed for the past maintenance of the child.

Lord Thurlow was said to have changed his first opinion on this point, and Ld. Alvanly frequently made a retrospective allowance for maintenance, and the practice afterwards grew familiar. 9 Ves., 285. 11 Ves., 1. 14 Ves., 449. The old rule says Chancellor Kent would lead to great inconvenience, for though the wants of the infant might be ever so pressing he could not receive any maintenance (charity excepted) without the expense of a suit and reference to a master." 4 John. Chy., 104.

In addition to the quotation already made from Hoffman's Master in Chy. we find the opinion of Lord Hardwick as to exparte applications for maintenance. "I had a doubt whether the Court could upon exparte applications allow maintenance for an infant where no cause is pending, *for it is at the peril of a guardian in socage what he applies for maintenance,* and he will be allowed according to the discretion he has used, &c. 2 Atkins, 315. Hoffman's M. C. 136. The same authority says, "if the petition prays maintenance as well as a guardian, which is usually the case in England, the or-

der includes a direction to the master to consider what is proper to be allowed for the maintenance and education of the infant. If the guardian proposed has expended any thing before, the words *for the time past* and to come should be added."

In such a case the state of facts laid before the master should contain in addition to what is requisite to the appointment of a guardian, a statement of the items of previous disbursements, which may be by way of schedule and a proposal of their amount to be allowed for previous disbursements as well as an annual sum for future maintenance. The statement of expenditures must be proved by vouchers as usual. The state of facts should contain everything except what is peculiar to the proposal for guardianship. It should be sworn to, and the voucher produced of past expenses if any."— Hoffman's M. C., 136. 3 Br. Ch. R., 88. 1 Br. Ch. R., 179.

In the case of McDowell *vs.* Caldwell, the subject was considered by the S. C. of South Carolina, on exceptions to the report of the master, and the Court said, " no account has been furnished of the actual expenditures, or of the length of time they were boarded abroad ; and the basis of the charge against them is by probable conjecture as to what would be the expenses of board, tuition, clothing, &c., for the whole length of time. It is a well settled rule that the guardian is not entitled to break in upon the capital of his ward for his subsistence, except under peculiar circumstances which do not enter into this case, and generally it is limited within the income." 2 McCord's Chy., 58.

We are of opinion then, that as a general rule, the guardian should be confined to the income ; and if there is necessity for invading it, his proper course is to apply to a Court for its sanction in the first instance. If, however, he does not adopt this course, disbursements beyond the income are at his peril, and he is bound to shew a state of facts and circumstances demanding and justifying them, and should produce the vouchers, &c. of his expenditures. The exceptions in this case assert the general principle that the mother is not entitled to any thing, and secondly, to no more than the income. Had specific objections been presented as to the mode of allowance by the master, the want of vouchers &c., there might have been greater difficulty in sustaining the report.

The second exception presents the enquiry, whether there are in the facts of this case as presented by the master, a sufficient excuse and justification for the guardian to break in upon the capital of

---

these infants. This can be determined only by reference to the condition of the estate in the hands of the widow, shewing her income as well as that of the infants. There were seven children of the intestate, all of them daughters but one, at the time of his death, Oct., 1833. One died four months after him, another eleven months, and the boy two years afterwards.

The administratrix had four negroes,

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Valued at | | 1,125 | 00 | | |
| Provisions, | | 240 | 00 | | |
| Other property, | | 401 | 25 | | |
| | | 94 | 00 | | |
| Debts due the estate, | | 247 | 50 | | |
| | | 2,107 | 75 | | |
| Paid debts, | | 701 | 58 | | |
| | | | | 1,406 | 17 |
| In January, 1835, a sale of lands and lots | | | | | |
| was had, | | 2,136 | 48 | | |
| Debts paid, | 569 | | | | |
| | 608 | | | | |
| | —1,187 | 00 | | | |
| | | | | 948 | 48 |
| In March, 1838, was a further sale of real | | | | | |
| estate, | | 3,992 | 04 | | |
| Debts paid, | | 371 | 02 | | |
| | | | | 3,620 | 92 |
| | | | | $5,975 | 58 |

The legal interest on the amount of the portions belonging to the widow and the distributees will be, according to an authority quoted, a fair test of the annual income of each, and we have endeavored so to regard it, without aiming at entire accuracy in the calculations.

Deducting the thirds of the widow from the $1,406 in her hands to Jan., 1835, and there will be as a portion to the children, $937 34; the interest on which for a year would be $74 98, to be divided amongst seven children for their support, making an allowance of near eleven dollars to each, for board, clothing and education to the 1st Jan, 1835. Proceeding to 1838, and adding this principal of 937 34 to the sales made in that year, after deducting the widow's dower, ($632) we have the sum of $1,569, the income of which, $125, is to be divided amongst four children, making $31 for each,

Joseph C. Osborne and wife, *vs.* Thadeus D. VanHorn, et al.

for maintenance and education to March, 1838. Progressing to to this period, and adding the sum of $1,569 to the $3,620.92 deducting dower, ($1,206.97) leaves $2,413.95, which added to $1,569 makes $3,982.95 as the property of the infants, the interest of which is $318.36, making $79.68 each, to be divided amongst the four children.

We will now enquire as to her means of support for herself. Her share to Jan., 1835 was $468.66, yielding an interest of $37.39. In 1835 her share was enlarged 632, making with the 408, $1,100.66, and giving an interest of $88. In 1838 her share was enlarged 1,206, making with the 1,100, $2,306, giving an interest of $184.48.

If correct in this view we think it very clear that at least until 1838 there was a deficiency of means, both of the widow and children, and that a Court of Equity, if applied to, would have allowed the capital to be broken in upon ; and there being no complaint of the exorbitance of the charges, or mistake of the master in this respect, we see no reason for disturbing his report. These two exceptions were then, in the opinion of this Court, properly overruled by the Court below.

We do not concur, however, with that Court in sustaining the eighth exception of complainants. The statute of limitations does not, in our opinion, bar the items charged for support of the children. The complainants ask equity, and must be required to do equity. They cannot expect to exact payment from the administratrix of this fund without allowing her all fair payments and deductions arising from and connected with her administration. This should be overruled.

We think, too, the Court erred in ordering the amount in the hands of Mrs. Osborne, as her share for life, in place of dower in the lands, to be paid over to the master, and by him laid out at interest. Mrs. Osborne has a life interest in this, not subject to be disturbed except on a showing of fear of loss or making away with it by her; and even then, she should have the privilege of giving security for it. But there is neither proof nor allegation of any peril attending its being with her. On the contrary, looking to the care and prudence in the past management of the property, there is every fair presumption of her taking proper care of it in future. It would, in our opinion, be dealing very harshly with one who has acted so well and so faithfully to her children to exhibit a distrust of her honesty in this respect. It is so seldom that Courts are called

to pass upon a case exhibiting so much merit, such rare fidelity and worth, that we would by no means discourage it by undue harshness or severity.

Indeed in looking at the state of accounts as exhibited by the master, we have been struck with the extraordinary prudence and success attending the management of the affairs of this estate by this lady; and that during the disastrous periods of embarrassment and lossses from 1838 to 1847. "No losses," says the master, "are claimed to be allowed for bad debts or depreciated money. No charge is made for supporting negro children, or taking care of sick negroes, and not a single medical bill charged."

Some reliance has been placed upon the agreement between Osborne and his wife, as preventing any allowance for board after the marriage. We do not regard it in that light. Osborne binds himself to his intended wife not to make a charge for board, but does this exclude and prevent her from doing it. This same agreement provides a separate interest to the wife in her property, and the design was probably to leave it to the management of the wife as a part of her separate affairs. The deed or contract is by no means clearly expressed. Still it is between Osborne and his wife, and not between them and the children. The latter were not parties—did not contribute to its consideration—are not bound by it in any way, how then can they claim under it?

A majority of the Court are of opinion that a sufficient allowance has been made in this case independent of the ten per cent. on the interest and hire, and direct this to be disallowed. They are by no means prepared to reject it as a good general rule, but think under the circumstances of this case, a deduction should be made in this repect.

We are then of opinion that the exceptions of complainant be overruled, and that the decree allowing the exceptions as to the statute of limitations, and the order for disturbing the life estate of Mrs. Orborne, and allowing the ten per cent. aforesaid, be reversed. In other respects the Master's Report is confirmed. The case will be remanded with instructions to enter a decree in conformity with this opinion.