## THOMAS MOWBRY *et al.*

### *v.*

## MARY ANN MOWBRY *et al.*

64  383
31a 347
64  383
149 200
64  383
61a 244

1. PARENT AND CHILD—*duty of the mother to maintain her infant children—whether their support will be made a charge upon her property.* While it is true that where infant children have no means, and are unable to earn a support, a court of chancery will make their support a charge upon the property of their widowed mother, yet that will not be done where the children have sufficient means of their own, or can maintain themselves, or provision has been made for their support.

2. SAME—*whether the duty of a parent attaches to the husband toward the children of his wife by a former marriage.* As a general rule, where a step-father receives the children of his wife by a former husband into his family, and adopts them as his children, he can not charge them for their support, nor can they claim from him pay for services. In such case, the relation of parent and child attaches, and continues until the connection is dissolved.

3. But the husband, by his marriage, does not become liable to support the children of his wife by a former husband, unless he so receives them and treats them as to raise the presumption that he intends to create the relation of parent and child.

4. WILLS—*whether the testator may create a charge upon the dower of his wife.* In giving property to a legatee or devisee, the testator may impose upon the gift such burdens as he may choose, and they will become binding if the gift is accepted, but the testator can not, by his will, create a charge upon the dower of his widow where she takes nothing under the will.

WRIT OF ERROR to the County Court of LaSalle county; the Hon. C. H. GILMAN, Judge, presiding.

Mr. D. P. JONES, for the plaintiffs in error.

Mr. J. B. RICE and Mr. D. B. SNOW, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that the father of complainants made and published his last will, by which he gave to his daughter Caroline one cow, of the value of $50. He gave to his son, Thomas, all of his remaining estate, both real and personal, that should remain after the payment of his debts and claims legally held against his estate; but by an additional clause, he made this provision:

"That it is my wish and expectation that the dower which my beloved wife will be by law entitled to, will afford sufficient income for the support of my wife and our two daughters, Mary Ann and Elizabeth Jane, and any posthumous heir we may have; but my executor is hereby directed to see that said minor heirs have a fair support and good common education, and, if necessary, to pay any necessary expenses incurred for that purpose, out of that part of my estate herein bequeathed to my son, Thomas. I do hereby appoint my

brother, George Mowbry, my executor of this, my last will and testament."

This will was duly admitted to probate, after the death of the testator, in the county court of LaSalle, and the executor received letters testamentary, and took upon himself the burthen of the execution of the provisions of the will. The widow was duly appointed guardian of the minor children, Mary Ann and Elizabeth Jane, who were, when this suit was brought, respectively of the age of seven and five years; that the widow had intermarried with one George Hartman; that the guardian has received no assets from the estate belonging to her wards. It appears that testator owned a quarter section of land at the time of his death, and that the devisee, with the widow, remained on it for two years after his death, during which time it does not appear that any account was kept or the proceeds of the farm were divided between him and the widow.

At the end of the time, they divided the farm, the widow receiving 53⅓ acres, on the south side, for life, as her dower, and Thomas the remainder of the quarter. On the portion set off to the widow, there are from 20 to 25 acres under cultivation, but the balance is brush and timber; and the annual rental value of that under cultivation is shown to be from $3 to $3.50 an acre per annum, and the evidence preponderates in favor of $1 per acre for the brush and timber. The whole of the dower thus set off is, perhaps, subject to taxes and repairs, of the yearly value of about $100, and net rents about $75 or $80.

The guardian, on a settlement of her guardian's account, was allowed, by the county court, for keeping, boarding, clothing, etc., of each child, for two years, $171.15—making, in the aggregate, $342.15 for supporting both children two years. It also appears that, after the guardian intermarried with Hartman, the children lived in his family. The proof, all considered, shows that the charges for supporting the children are reasonable—less than usual charges for such services.

25—64TH ILL.

It is first urged that, where the mother has separate property, the law charges her with the support of her minor children having no means of their own for their support, and a court of chancery, if necessary, will make their support a charge on such property. This is, no doubt, true where infant children have no means and are unable to earn a support, and no other provision has been made for their maintenance; but where they have the means for their own support, or provision has been made for that purpose, or her children can maintain themselves, the law does not charge the mother with such support. In this case, there is nothing to show that the mother has any other separate property than the dower from the former husband's estate; and it is claimed that the *precatory* words of the will made the support of the children a charge on her dower. It is true, the testator does say that it is his wish and expectation that the dower his wife would receive from his estate would be sufficient to support these children. Ordinarily, such language, coupled with a bequest or devise, creates a charge on the property thus given.

In this case there is, however, wanting an essential element to create a charge on the widow's dower, and that is, that she receives and holds her dower independent of the will, and by virtue of the law. He devised or bequeathed her nothing. She held her dower and specific articles of personal property independent of the wishes of her husband, and he was absolutely powerless to deprive her of her rights to the same, by will or other means (see *In re Taylor*, 55 Ill. 252), unless it might have been to the personal property, by its sale and the expenditure of the money, or by giving it away in his lifetime. Having, then, no power to deprive her of such rights by will, it may well be asked how he could incumber her rights by his will; as well might it be claimed that he could have, by his will, charged the support of these children on the property of one of his children, held in his own right, or on the property of a stranger. In giving property to a legatee or

devisee, the testator may impose upon the gift such burthens as he may choose, and they will become binding if the gift is accepted. The donee takes it *cum onere*, but the burthen can only be imposed upon property owned by the testator, and not to the injury or destruction of the rights of others.

The next question is, whether, the children having lived with Hartman, the step-father, during the time for which the charges are made, any claim can be made on Thomas Mowbry for the support thus furnished them. It is urged that as the children lived in the family of Hartman, he placed himself *in loco parentis*, and can not legally charge for their support, nor can his wife, their mother. It is true, as a general rule, that where a step-father receives the children of his wife into his family, and adops them as his children, he can not charge them for their support, nor can they claim from him pay for services. In such case, the relation of parent and child attaches, and continues until the connection is dissolved. *Bush* v. *Blanchard*, 18 Ill. 46. But it was there said, as it is uniformly held, that the husband, by his marriage, does not become liable to support the children of his wife by a former husband. To become so liable, he must so receive and treat them as to raise the presumption that he intends to create the relation of parent and child; and when the relation is assumed, so long as it continues both parties are bound by it.

In this case, there is nothing in the evidence from which it can be inferred that Hartman is *in loco parentis* to these children. His wife swears that she and the children had lived with him the greater part of the time for which the charges were made, and that he supported them; and the account was allowed by the probate court, which renders it *prima facie* evidence that the charges were properly made. From the extreme tender years of these children, and the fact that their services were worth nothing to the step-father—in fact, they are shown to have been incapable of rendering any service— we can not infer that Hartman could have adopted them as his own from motives of interest, and it is not shown he did

388 MOWBRY *et al. v.* MOWBRY *et al.* . [Sept. T.,

Opinion of the Court.

for other reasons; nor are there facts given that show, or from which it can be inferred, that he had adopted the children.

In the case of *Bond* v. *Lockwood,* 33 Ill. 212, after an extensive review of the authorities relating to the duties of guardians, it was said that the husband is not bound by law to board the children of his wife by a former husband, nor is the wife under such obligation; and he, as their guardian, was allowed to charge for their board and clothing. But it was also said that he might have received them into his family under such circumstances as would rebut the presumption that he had a legal right to make such charges, but it was not shown.

Then, if neither Hartman nor his wife was required by law to support these children, unless he had assumed the duty, the burden must fall where the father placed it, and that is upon the property devised to Thomas Mowbry. The evidence shows the charges to have been reasonable, and being a charge on the land, there was no error in decreeing it to be a lien, and if not paid within the time specified, that so much of it be sold as should be required to pay the amount of the decree and costs. As to the costs, they were in the discretion of the court, as the statute declares and this court has frequently held.

We do not see that the other heirs of the testator were necessary parties. The question of the validity of the will was not involved in the suit, and we fail to see how their interests could be affected by any decree that could be rendered in the case. The will only charged the property of Thomas, and the bill only sought to subject it to the charge; but the decree requires Thomas to pay annually $190 to the guardian for the support of these children, until the further order of the court. This was erroneous. Even if chancery could make such a decree, the bill was not filed with reference to such relief. That question was not investigated by the proof heard. That portion of the decree is reversed, but in all things else it is affirmed, and the costs divided.

*Decree modified.*