[No. 6,361.—Department One.]

JANE N. MOULTON ET AL. v. AARON HOLMES ET AL.

EXECUTORS—COMPROMISE—ESTATES OF DECEASED PERSONS—TRUSTEE.— Executors and administrators have the legal right to compound and discharge debts due to their testator or intestate. Such a power belongs to all trustees.

ID. — ID. — ID. — Section 1588 of the Code of Civil Procedure, authorizing compromises by executors and administrators of debts due the estate, upon the approbation of the Probate Court, was intended for their protection, and is not restrictive of their common-law powers.

APPEAL from an order granting a new trial, in the Fourth District Court, City and County of San Francisco. MORRISON, J.

· After the decision, the appellants filed their petition that the appeal be reheard in Bank, and the application was denied.

*Stetson & Houghton*, for Appellants.

Moore had no authority to make the release. This authority, if he had any, must have come from Moulton or his executors. If from Moulton, either through the " assignment " of October 20th, 1868, or the instrument of April 19th, 1869.

The " assignment " of October 20th, 1868, does not assign the contract absolutely—only to the extent of $8,000. This assignment might have survived; it might have empowered Moore to sue for the $8,000, but it gave no right to sell the contract, or make a settlement or compromise of it. This is familiar law. (Edwards Blmts. p. 261, ch. 5, ed. 1855; Story Blmts. § 321; *Garlick* v. *James*, 12 Johns. 146; *Bowman* v. *Wood*, 15 Mass. 534.) And the Code re-enacts it. (Civ. Code, § 3006.)

The deed of April 19th, 1869, was inoperative, because it was only a release without words of grant, and the grantee had no interest in the land to enable him to take as a releasee. (Com. Dig. " Release "; 4 Cruise Dig. *84, *et seq.* ; 2 Blackst. Com. *324, and notes; 2 Wash. R. P. 2nd ed. *606; *Touchard* v. *Crow*, 20 Cal. 150; *Mullen* v. *Boggs*, 25 id. 186.)

The release is void for want of the approval of the Probate Court, under Civil Practice Act, § 201. This statute was passed for the protection of creditors, legatees, etc., and is part

and parcel of our whole system of law, which aims to keep estates of deceased persons, minors, and lunatics, always under the control of the Probate Court. An administrator or guardian cannot sell the estate without a previous order of Court, made on notice; there must be public advertisement of the sale, and final confirmation. A compromise may divest the estate of valuable property—may even require a conveyance of land—and should be subject to the approval of the Court as much as a sale.

The statute, by prescribing how and in what cases an executor may exercise his common-law powers, limits him to that extent. The statutes relating to sales of property, and that authorizing compromises, are *in pari materia*.

Three similar statutes have been referred to, and they are cited below, with the decisions upon them. It will be seen, that in those States whose systems of probate law are most like ours, compromises by an executor are of no validity, unless approved by the Probate Court. (4 N.Y. Stats. at Large, p. 506; *Chouteau* v. *Suydam*, 21 N.Y. 184; 1 Comp. Laws Nev. § 683; *Lucich* v. *Medin*, 3 Nev. 108; *Trammell* v. *Swan*, 25 Tex. 473–500; *Edmundsen* v. *Garnett*, 33 id. 250–259.) And the common law is adopted in Texas, just as in New York and California.

*Jarboe & Harrison*, for Respondents.

The power to compromise with Holmes was either in Moore, upon the ground that he was vested with the apparent and legal title to the contract and lands, or in the executors, upon the ground that the estate of Moulton was the equitable owner thereof, or in both Moore and the executors, as representing the entire title thereto; and the act of Moore, under the directions and by the consent of the executors, is binding upon them as well as upon him. (*Storrs* v. *Barker*, 6 Johns. Ch. 166; *Doughrey* v. *Topping*, 4 Paige, 94; *Favill* v. *Roberts*, 50 N.Y. 222.)

An executor, as such, has the power to compromise a claim in favor of his estate without any authority or ratification of the Probate Court. (*Murray* v. *Blatchford*, 1 Wend. 583; Brewer's Appeal, 57 Pa. St. 52; Wyman's Appeal, 13 N.H.

18; *Chace* v. *Bradley*, 26 Me. 538; *Boyd* v. *Oglesby*, 23 Gratt. 674, 684; *Chouteau* v. *Suydam*, 21 N. Y. 184; *Chadbourn* v. *Chadbourn*, 9 Allen, 173.)

"An executor is not only bound to compound and release a debt when the interests of the estate require it, but he would be guilty of culpable neglect if he should fail to do so and lose the debt. He is bound to act in such case as a discreet and prudent man would act were the debt his own." *In re Scott*, 1 Redf. 236.) And the executor having this power, the compromise is in all instances, in the absence of fraud, binding upon the estate, and may be invoked for the protection of the party compromising with him. (*Long* v. *Shackleford*, 25 Miss. 559; *Chace* v. *Bradley*, 26 Me. 538.)

The effect of the compromise is never questioned. The only question ever raised thereon is whether the executor is liable for a *devastavit.*

McKEE, J.:

This was an action brought by the plaintiffs, as executors of the estate of B. F. Moulton, deceased, to set aside a settlement of accounts between the defendants Holmes and Moore, and a release executed in consideration thereof, and to compel an accounting of the dealings and transactions of Holmes in the management and sales of certain real estate held by him as the trustee of Moulton.

It was charged in the complaint, that the settlement was not for the benefit of the estate; that it was made without the authority of the executors and the approval of the Probate Court, and under a mistake as to the insolvency of Holmes, which was caused by false and fraudulent representations made by the latter for the purpose of cheating and defrauding the estate out of the moneys which he had in his hands belonging to it, and of appropriating them to his own use.

Holmes, in his answer, denied the allegations of the complaint. Upon the issues made by the pleadings, the cause was referred to a referee to take and state an account of the transactions of Holmes as the trustee of Moulton. Upon the coming in of the report, the Court below made and filed its findings of facts, and gave judgment for the plaintiffs for the sum of $57,545.66, with

interest and costs.   But afterwards, upon a motion made by the
defendant Holmes for a new trial, upon the grounds that the
evidence was insufficient to justify the findings of the Court, and
that the decision was against law, the Court ordered a new trial,
and from the order comes this appeal.

Presumptively, the order is correct; and it is incumbent upon
the appellants to show that the Court erred.   They contend that
it was error to grant a new trial, because the release, executed in
consideration of the settlement between Holmes and Moore was
voidable, if not void, for the reason that Moore had no authority
from Moulton, or from the executors of his estate, to make the
release, and it was never approved by the Probate Court.

The release itself was not so much the object of attack as the
consideration for which it was given.   Having been given in
consideration of the settlement of accounts or transactions be-
tween Holmes and Moore, acting as the attorney of the execu-
tors, the object of the action was to impeach the settlement for
fraud and want of authority.

The Court found that there was no fraud in the settlement,
and that it had not been made or approved by the Probate
Court.   But it did not find that it had been authorized by the
executors, although it found probative facts from which that
fact ought to have been deduced.   For it found, in substance,
that Moulton was, in his lifetime, the owner of 113 lots of land
in the city and county of San Francisco, and on the 14th of
August, 1868, he conveyed them, by a contract in writing, to
Holmes, for the sum of $90,000.   Of this amount, $43,526 were
paid at the time of the transaction, leaving due and unpaid a
balance of $46,474, which, by the contract, Holmes agreed to
pay as follows, namely: By buying in an outstanding title to
some of the lots, " on such terms as he and Moulton might agree
upon," and by putting them all in market and selling them from
time to time as he could; and, after paying the unpaid purchase-
money in that way, he agreed to divide the net proceeds of the
sales equally between himself and Moulton, after payment of
the expenses, etc., attending the management and sales of the
property.   Several sales were made under the contract, and a
portion of the moneys realized from them was paid to Moulton.

On the 20th of October, 1868, Moulton assigned the contract

to the defendant Moore, to the extent of $3,000, and authorized him, as his attorney, to collect from Holmes any money which might be coming to him from sales made by Holmes. Afterwards, on the 19th of October, 1869, he conveyed all his right, title, and interest in the land, by quit-claim deed, to Moore, with intent to make Moore his trustee; and soon after the making and delivery of this deed he died; the appellants became his executors, and Moore continued to act as attorney for the estate.

In *Stewart* v. *Nevins*, 50 Cal. 279, it was held, that this conveyance to Moore, and the contract entered into with Holmes, left the testator no interest except an interest in the moneys for which the lands were to be sold under the contract with Holmes; that the precise sum to which the testator would be entitled could only be ascertained upon accounting and settlement first had with Moore and Holmes; and that the surplus, should there be one, belongs to the estate of the testator, and the executors are entitled to an accounting concerning it.

To ascertain this sum, Holmes and Moore made the settlement which is now sought to be impeached. Result of the settlement was, that Holmes conveyed to Moore, in trust for the estate, 46 lots, being all of the unsold portions of the land transferred to him by the testator. Moore executed and delivered to him a release, in which were acknowledged the execution and delivery of the conveyance, and that there had been received from Holmes, by Moulton in his lifetime and by Moore after his death, the sum of $66,811 on account of the transactions and sales under the contract, and that in consideration thereof, he, "as owner and assignee of the contract," canceled and annulled the contract, and released and discharged Holmes from all liability on account of it.

The Court did not find that Holmes was in fact insolvent at the time of the settlement, or that he represented himself to be so, or that the executors knew of, advised, and consented to it, and afterwards ratified it. On the contrary, it found that the executors did *not* consent to the settlement or ratify it, and that they did not authorize it, except on the condition that Moore should satisfy himself that Holmes was insolvent to the extent of $60,000, and that Moore never did satisfy himself that Holmes was insolvent to that extent.

A careful examination of the record satisfies us that the findings upon these matters are not sustained by the evidence. The evidence concerning them is not conflicting: it runs all one way ; and it proves beyond question that Moore learned from reliable authority that Holmes was insolvent, and he communicated his knowledge to the executors, and the executors agreed with him upon the subject of Holmes's insolvency, and that it was best that a settlement should be made with him. They accordingly advised Moore to settle with him " upon the best terms he could get." At their solicitation, Moore made the settlement, and informed them of all that had been done. "They did not disapprove of it," but received the property which had been conveyed by Holmes in trust for the estate. When they received it, they knew that both Holmes and Moore had mortgaged it before the settlement ; and knowing that fact, they, by an agreement in writing, assumed payment of the notes and mortgages made by Moore, and agreed to save Moore harmless from any liability on account of them.

Instead of a finding that the executors did not consent to the settlement, or authorize it to be made, the Court should have found that they did consent to it and authorized it.

The failure of the Court to find according to the facts, and the finding of certain material facts being against the evidence, that reason alone was sufficient to authorize the Court below to grant a new trial. And even if the evidence had been conflicting, and the Court was satisfied that it had erred in adjudicating it, this Court would not disturb the decision ; for a motion for a new trial is a motion addressed to the sound legal discretion of the Court, and the Appellate Court will interfere only in case of a plain abuse of such discretion. (*Hall* v. *Bark Emily Banning*, 33 Cal. 525.)

As the Court found that the settlement sought to be impeached was made without fraud, it was a material fact to be found that it was authorized by the executors ; for if it was a fair and honest transaction, made by the authority of the executors, and in the interest of the estate, it was unimpeachable. Executors and administrators have the legal right to compound and discharge debts due to their testator or intestate. (3 P. Wms. 381 ; 10 Smedes & M. 404 ; *Chadbourn* v. *Chadbourn*,

9 Allen, 173.) " An administrator," says the Supreme Court of Virginia, " is invested with full dominion over the assets of the estate, and with full discretion for the liquidation and settlement of all claims due to or from the estate. He may make settlements and compromises with creditors, and give them confessions of judgments.    *   *   *    And if he acts fairly, in good faith, and with due regard to the interests of the estate, the distributees will be bound by his acts, and he will be protected." (*Boyd* v. *Oglesby*, 23 Gratt. 674.)   " An executor is not only bound to compromise and release a debt when the interests of the estate require it, but he would be guilty of culpable neglect if he should fail to do so and lose the debt.   He is bound to act in such a case as a discreet and prudent man would act were the debt his own."   (*In re Scott*, 1 Redf. 236.)

Such a power belongs to all trustees for the benefit of the trust estate, and they have the right to assume the responsibility of judging of the necessity for its exercise.   The circumstances which may render it necessary are presumably better known to them than to any one else.   Executors and administrators have, therefore, never been required to obtain preliminary authority for that purpose from the Probate Court, although the judgment had to be ultimately approved by the Court when they came to render an account of their trust.

Section 1588 of the Code of Civil Procedure, which provides that, " whenever a debtor of a decedent is unable to pay all his debts, the executor or administrator, with the approbation of the Probate Court or judge, may compound with him, and give him a discharge upon receiving a fair and just dividend of his effects; a compromise may also be authorized when it appears to be just and for the best interests of the estate "—is intended for the protection of executors and administrators, and is not restrictive of their common-law powers.   " It is not to be doubted," says the Supreme Court of New Hampshire, in construing a similar statute, " that before the passage of the statute an administrator might lawfully compound with a debtor, and receive less than the amount of the debt, if he could show that what he had done was beneficial to the estate.   But he acted in some peril in the matter; for if an objection was taken, the burden of proof lay upon him to show that he had acted judiciously, and that the estate had not been prejudiced by the

compromise. To obviate this difficulty, and perhaps also to remove doubts upon the subject, the statute has provided a mode in which the administrator, by obtaining a previous authority from the judge, may compromise with a debtor with perfect safety, and without being subjected to expense in sustaining his acts. But the right to compromise, which existed prior to the passage of the statute, is not taken away. It may still be exercised as before, subject to the same limitations and risks." ( *Wyman's Appeal,* 13 N. H. 18.) And in *Chouteau* v. *Suydam,* 21 N. Y. 179, where it was objected that an executor did not obtain the authority of the surrogate to compromise a claim of an estate pursuant to a statute which authorized it, it is said: "The object of the statute was not to confer upon executors and administrators powers which otherwise they would not possess, but to afford them additional protection when acting in good faith in the exercise of their common-law powers. Although they could compromise a claim or compound a debt without the aid of the statute, still they might perhaps be held responsible for any serious error in judgment in so doing. The statute enables them to obtain the sanction of the judgment of the surrogate in addition to their own, and thus affords them additional protection if their conduct is fair and honest."

Besides, the findings in this respect were not only unsustained by the evidence, but some of the findings of law were against law; for the Court found, that, of the 113 lots, eleven of them were sold at auction, and the net proceeds of the sale applied to the extinguishment of a balance due upon the purchase-money of the outstanding title which Holmes had bought in pursuant to the terms of the contract; yet it found, as matter of law, that Holmes was not entitled to be credited with that sum. This decision was contrary to law, because the outstanding title was purchased for the benefit of Holmes and the testator, and the amount paid for it was to be credited upon the balance of the unpaid purchase-money.

Where a finding of fact is against the evidence, and a finding of law is contrary to the finding of fact, it is not error in a court to grant a new trial.

Order affirmed.

McKINSTRY, J., and Ross, J., concurred.