NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—January, 1886.

### BROWNE v. BEDFORD.*

*In the matter of the judicial settlement of the account of* CAROLINE T. BEDFORD, *as administratrix of the estate of* HENRY A. BEDFORD, *deceased.*

A Surrogate's court has jurisdiction to entertain and adjust a claim for past maintenance of an infant.

An infant whose father is dead, and has an estate of his own, may be maintained out of the same, by the custodian thereof, without previous judicial authorization; and on a subsequent application to the court by the latter for credit in such behalf, his expenditures, if shown to be reasonable, will be allowed, even to the utter exhaustion of the principal.

Decedent died intestate in 1865, leaving, him surviving, a widow and two infant children, and an estate which consisted exclusively of an interest in a partnership with a brother of his wife. Immediately after the death, the widow, though not yet appointed administratrix, arranged with the surviving partner for the retention in the business of decedent's share, the same to draw interest upon an agreed valuation,

and the principal to be paid as soon as practicable.   These terms were carried out by the partner, by the payment of interest, and, from time to time, instalments of the principal, until he became insolvent in 1874, in which year the widow took out letters of administration.   The son resided with and was supported by the mother eleven years, until his death, and the daughter was in like manner provided for during sixteen years succeeding decedent's death.   Upon an accounting had at the instance of the daughter, it was insisted, in her behalf, that respondent, by reason of having left decedent's interest in the partnership in the hands of her brother, and delayed to enforce the claim of the estate against him, should be charged with the value thereof; also, that, not having been appointed guardian, she should not be allowed credit for any sums expended for the children's benefit.—

*Held,* that, respondent's course in regard to the partnership assets appearing to have been performed in the exercise of a prudent discretion, the same should not be condemned as illegal; and, it being shown that a moderate allowance for the maintenance of the daughter from 1865 to 1880 would have absorbed the latter's entire interest in the estate, respondent was not chargeable with any balance of indebtedness.

HEARING of exceptions to report of referee to whom were referred the account, and objections thereto, of the administratrix of decedent's estate, in proceedings for judicial settlement.

H. G. BATCHELLER, *for Mrs. Browne.*

B. G. HITCHINGS, *for surety.*

WM. F. SCOTT, *for administratrix.*

THE SURROGATE.—When this decedent died, in April, 1865, he was engaged in the jewelry business in this city, in partnership with his wife's brother, Franklyn Horton.   He left no estate, or substantially none except his interest in that business—an interest then valued at $7,849.26.   He left him surviving his widow, and two children—one a boy five years of age, the other a girl of three.   Immediately after his death, the widow (not being at that time administratrix) ar-

ranged with her brother, Mr. Horton, that he should retain for a time the interest of the estate in the business of the copartnership, allow her annually while it was so retained, 10 per cent. upon the valuation above stated, and pay her the principal sum as soon as practicable.

The decedent's son survived him eleven years, and died at the age of 16 ; the daughter is still living, and became of age in 1883. Throughout his life the son resided with his mother. The daughter dwelt with her almost uninterruptedly for the first sixteen years after the father's death. Mrs. Bedford applied for and received letters of administration in 1874, but neither she nor any other person was ever appointed guardian of the children. In September, 1883, her daughter (since married and known as Mrs. Browne) procured from the Surrogate an order directing the administratrix to account. An account was thereafter filed, to which Mrs. Browne interposed objec-. tions. The issues thus raised were sent to a referee selected by the consent of counsel for both parties.

The referee found, as the result of a brief trial which ensued before him, that the administratrix was chargeable with the value of all the property left at her husband's death in the hands of his surviving partner, together with interest thereon, and that by way of credit she was entitled to nothing whatever. To this report the administratrix filed no exceptions. In course of time a decree was entered in accordance therewith, whereby she was directed, among other things, to pay to her daughter, Mrs. Browne, as her distributive share of this estate, the sum of $4,778.01.

The administratrix failing to make this payment, an action was commenced against one of the sureties upon her official bond. Counsel for this surety then applied to the Surrogate for an order opening the decree before mentioned and permitting the surety to dispute the liability of his principal for the sums wherein she was by such decree held chargeable, or for any sum whatsoever. The decree was opened, and the account and objections thereto were submitted to another referee, the second order of reference providing that the surety might appear in the proceeding and act therein for his own protection as he should be advised.

At the new hearing several hundred pages of testimony were taken, upon which the referee found, among other things, that there was received from Horton by the administratrix $8,987.56, and that with that she should be charged, but that she should be credited with a like sum expended by her in supporting herself and her two children between April, 1865, and December, 1876, and herself and daughter from the last named date until April, 1880.

To the findings of the referee there were taken on behalf of the contestant numerous exceptions, which are specially passed upon in a memorandum filed herewith. Her counsel insists that the conclusions reached by the former referee were sound, and ought now to be approved by the Surrogate; that the administratrix should not have left in her brother's hands her husband's interest in the copartnership; that, having been guilty of this fault originally, she should not have delayed from year to year the en-

forcement of the claim of the estate, and that for this negligence and misconduct she should be charged with the original value of that claim, and with interest thereon from a year after decedent's death. He insists also that, as she was never appointed guardian of her children, she should be disallowed any credit for sums expended by her for their benefit, and especially for sums so expended before she received letters as administratrix, and while she was appropriating and expending the assets of the estate without lawful authority.

I cannot hold her to such strict accountability. I think that she and her sureties should be treated precisely as if she had been acting, ever since her husband's death, under letters of administration. Now, if she had, in fact, been administratrix at the outset, it is by no means clear to me that, as regards the interests of the estate in the copartnership business, she could have taken any more prudent course than that which was actually pursued. It is not shown that Horton had either the means or the inclination to purchase that interest for ready cash at the $7,849.26 valuation. And I see no reason to doubt that a summary winding up of the business and a summary sale of the stock on hand would have resulted, as Horton says it would have been likely to result, in a great sacrifice of values.

The situation was one in which Mrs. Bedford was called upon to exercise a somewhat delicate and difficult discretion. It seemed best to her, under all the circumstances, to leave the interests of the estate in Horton's hands, and to give him time to discharge his

indebtedness. For this forbearance he paid her ten per cent. annually on the total amount of that indebtedness, down to February 1st, 1872, and seven per cent. thenceforward until February 1st, 1874—such payments amounting in all to $4,758.89. In addition to this sum, he also paid her $2,632.86 of the principal, or about one third of the original value of her husband's interest. He subsequently became embarrassed, and, in 1874, compromised with his creditors at twenty-five cents on the dollar, reserving the right to meet in full his liabilities to this estate; and those liabilities he subsequently did meet to the extent of about $1,500. In 1874 he was robbed of more than $5,000 worth of property. In 1876 all the stock in his jewelry store was stolen. He has ever since been insolvent.

Now, I cannot find upon this evidence that there was any period at which the administratrix, by undertaking to enforce her claim against Horton, could have reasonably expected to secure, or could, in fact, have secured any better results for the estate than were obtained by the course she saw fit to adopt; nor do I find that that course should be condemned as illegal. I hold her accountable, therefore, for such sums as actually came to her hands, and for such sums only (In re Scott, 1 *Redf.*, 234; Chouteau v. Suydam, 21 *N. Y.*, 179; Berrien's estate, 16 *Abb. Pr.*, *N. S.*, 23; Thompson v. Brown, 4 *Johns. Ch.*, 620; Shepard v. Saltus, 4 *Redf.*, 232; Matter of Gray, 27 *Hun*, 455; Matter of Weston, 91 *N. Y.*, 502; Pomeroy's Eq. Jur., § 1070).

I sustain the findings of the referee to the effect

that the administratrix is entitled to be credited with the moneys expended for the support and maintenance of the children, and I find that she did, in fact, apply for that purpose the entire interest of her son and daughter in the sums paid her by Horton.

That the Surrogate has jurisdiction to allow credit for past maintenance cannot be doubted since the decision of the Court of Appeals in Hyland v. Baxter, 98 *N. Y.*, 610). Said ANDREWS, J., pronouncing the opinion of the court in that case : " There seems to be no good reason arising out of the nature of the question, or the constitution of the tribunal, which should deprive a Surrogate, upon the settlement of the account of an administrator, where advances have. been made for maintenance, to determine, upon equitable principles, a claim for an allowance. On the contrary, it would seem to be a very proper place and time to have the question determined, thereby saving expense and preventing further litigation. It is true that an administrator, in making advances, acts without authority and at his peril, but this is true in every case where a parent, or one in *loco parentis,* or a trustee, or a guardian, makes advances not previously sanctioned by the court, and comes to the court for relief. The fact that the question is an equitable one, and depends on equitable principles, is not a ground of objection to the jurisdiction."

Now it is a settled doctrine in equity that where an infant, whose father is dead, has an estate of his own, he may be maintained out of such estate by the person in whose hands it lies, and that where such person, even without previous sanction of the court, has

applied property of the infant for such maintenance, he will, if his expenditures have been reasonable and proper, be exonerated from any liability therefor.

For such sums, therefore, as would have been allowed to the administratrix for the support of her children, in case she had made application therefor in advance, she may properly be credited now (Hyland v. Baxter, *supra;* Matter of Kane, 2 *Barb. Ch.*, 375; Matter of Burke, 4 *Sandf. Ch.*, 617; *Ex parte* Petre, 7 *Ves.*, 403; Wilkes v. Rogers, 7 *Johns.*, 566, at 581; Willson v. Willson, 2 *Dem.*, 462; Voessing v. Voessing, 4 *Redf.*, 360; Mowbry v. Mowbry, 64 *Ill.*, 383; Bruin v. Knott, 9 *Jur.*, 979; Gladding v. Follett, 2 *Dem.*, 58; Osborne v. Van Horn, 2 *Fla.*, 360; Newport v. Cook, 2 *Ashm.*, 332; Matter of Bostwick, 4 *Johns. Ch.*, 100; Beardsley v. Hotchkiss, 96 *N. Y.*, 201; In re Roper's Trusts, *L. R.*, 11 *Ch. Div.*, 272).

Under all the circumstances disclosed by the evidence, the allowance to the administratrix should not be limited to income. The rule, that the principal of an infant's estate should not ordinarily be encroached upon for his support, is not inflexible. On the contrary, if the estate is so small that the income is insufficient, resort may be had to the principal (Barlow v. Grant, 1 *Vern.*, 255; Bridge v. Brown, 2 *You. & C. C.*, 181; *Ex parte* Green, 1 *Jac. & W.*, 253; Osborne v. Van Horn, *supra;* Newport v. Cook, *supra;* Matter of Bostwick, *supra*).

If, from time to time, Mrs. Bedford, in her struggle to maintain herself and her children, had asked leave to resort to the funds in her hands in which they were interested, I cannot doubt that, prior to April, 1880,

Mrs. Browne's share in this estate would have been wholly consumed—both that part to which she became directly entitled upon her father's death and that portion of her brother's share which became hers eleven years later.

An average of $400 per year would, in my judgment, have been a moderate allowance to the mother between 1865 and 1880, and the portion of that allowance fairly chargeable to the daughter's share would have been equal to the daughter's entire interest in the estate.

The evidence shows that the administratrix was obliged to supplement with her own earnings the funds obtained from Horton for the support and maintenance of her family, and that she is now without means. I hold that she is not chargeable with any balance of indebtedness whatever.